I HEREBY CERTIFY THAT THIS
DOCUMENT WAS SERVED BY FIRST
CLASS MAIL, POSTAGE PREPAID, TO
(SEE BELOW) AT THEIR RESPECTIVE
MOST RECENT ADDRESS OF RECORD IN
THIS ACTION ON THIS DATE

TO:          DATE:    DEPUTY CLERK:

Plaintiff on January 14, 2015 by TS

**FILED**
CLERK, U.S. DISTRICT COURT

January 14, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: ____ TS ____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| ROBERT TORO,<br><br>         Plaintiff,<br><br>         v.<br><br>ROBERT A. EARL et al.,<br><br>         Defendants. | No. SA CV 13-00872-DSF (DFM)<br><br>MEMORANDUM AND ORDER<br>DISMISSING SECOND<br>AMENDED COMPLAINT WITH<br>LEAVE TO AMEND |

## I.

## BACKGROUND

On June 20, 2013, Plaintiff filed a pro se complaint against five Defendants after being granted leave to proceed in forma pauperis. Dkt. 3 ("Complaint"). Plaintiff alleged a violation of 42 U.S.C. § 1983, seventeen violations of the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. §§ 4851 et seq., and thirteen state-law claims. See Dkt. 16 at 1. The gravamen of Plaintiff's Complaint was his eviction after an unlawful detainer proceeding from his residence in Huntington Beach, California, and the Defendants he named were the five members of the Earl family who owned

the property. See Complaint at 4, 10. This Court dismissed Plaintiff's 29-page Complaint with leave to amend because Plaintiff's allegations were insufficient to state a cause of action under § 1983 against Defendants in that he did not allege sufficient facts to demonstrate that the Earls were acting under color of law. See Dkt. 16 at 3-4.

On October 29, 2013, Plaintiff filed a 75-page First Amended Complaint. Dkt. 17 ("FAC"). The FAC named seven Defendants—three Earls as well as four new Defendants—and contained thirty-three causes of action. See Dkt. 22 at 1-2. Like the Complaint, Plaintiff alleged violations of the federal civil rights statutes, the Residential Lead-Based Paint Hazard Reduction Act, and various state-law claims. See id. at 2. The focus of the FAC continued to be Plaintiff's eviction after an unlawful detainer proceeding, but Plaintiff widened his allegations considerably to include allegations against the California Superior Court judicial officer who presided over those proceedings as well as Governor Jerry Brown, who Plaintiff alleged was the proximate cause of the violations of Plaintiff's constitutional rights because of his cuts to the California state courts' budget. See id. at 3-4.

On December 18, 2013, the Court dismissed the FAC with leave to amend. See id. at 14-15. The Court concluded that Plaintiff's constitutional claims were barred by the Rooker-Feldman doctrine since they appeared to be a de facto appeal of the state court unlawful detainer proceeding. See id. at 5-7. The Court also concluded that Plaintiff's allegations remained inadequate to demonstrate that the private-actor Defendants were acting under color of state law. See id. at 7-8. The Court also found that Plaintiff's allegations were insufficient to state violations of 42 U.S.C. §§ 1985 and 1986. See id. at 8-10. The Court also concluded that Plaintiff's claims against the Orange County Superior Court Commissioner named in the FAC were barred by the doctrine of judicial immunity, see id. at 10-11; and that Plaintiff's claims against

2

Governor Brown did not establish the kind of "fairly direct" connection to the alleged violations of Plaintiff's constitutional rights, see id. at 11-12.

On August 6, 2014, after receiving numerous extensions of time, Plaintiff filed a 238-page Second Amended Complaint. Dkt. 36, 36-1, 36-2, and 36-3 at 1-15 ("SAC").[1] In the SAC, Plaintiff names the following 17 Defendants, having deleted one Defendant who was named in the FAC and added eleven new Defendants: (1) Robert A. Earl; (2) John Earl; (3) Robert W. Earl; (4) California Governor Edmund G. Brown Jr. ("Governor Brown"); (5) Orange County Superior Court Commissioner Carmen R. Luege ("Judge Luege"); (6) former Presiding Judge and current Orange County Superior Court Judge Thomas J. Borris ("Judge Borris"); (7) current Orange County Superior Court Presiding Judge Glenda Sanders ("Judge Sanders"); (8) Riverside County Superior Court Judge Jackson Lucky ("Judge Lucky"); (9) Riverside County Superior Court ("Riverside Court"); (10) Orange County Superior Court ("OC Court"); (11) the California Democratic Party ("CDP"); (12) the California Democratic Party State Central Committee ("CDPSCC"); (13) the Judicial Council of California; (14) the state of California; (15) the United States of America; (16) Diana Comberiati; and, (17) Mark Nashed. SAC at 3-4. Robert A. Earl, John Earl, and Robert W. Earl will be referred to collectively as "the Earls."[2] The OC Court, Judge Borris, Judge Sanders, Judge Luege, and Doe 1 will be referred to as "OC Defendants." Governor Brown, the CDP, the CDPSCC, Judge Luege, Judge Lucky, the Judicial Council of California, and the State of California will be referred to collectively as "State

---

[1] Because the length of the SAC means that it is spread out over four different docket numbers on CM/ECF, the Court will use Plaintiff's page numbering in its citations.

[2] Robert A. Earl and Robert W. Earl are each named as individuals as and as Trustees of the Robert W. Earl Revocable Living Trust.

1  Defendants."

2     Plaintiff cites a list of federal and state constitutional provisions and

3  statutes that he alleges Defendants have violated. See SAC at 1-3. The list is

4  too long to recount here; it includes numerous provisions of the United States

5  and California Constitutions;  42 U.S.C. §§ 1983, 1985, and 1986; several

6  provisions of Title 18 of the United States Code; several provisions of the

7  California Penal Code; several provisions of the California Election Code; and

8  numerous state-law claims. Id. Plaintiff also seeks a wide array of relief,

9  including an order reducing California's representation in Congress; an order

10  declaring the judicial officers named in the SAC not subject to judicial

11  immunity; an order filing criminal charges against the State Defendants; an

12  order confirming Plaintiff's right to form a posse and perform a lawful citizen's

13  arrest of certain State Defendants with the assistance of the United States

14  Marshal's Service; and an order declaring portions of California's Election

15  Code null and void. Id. at 209-21. Plaintiff also seeks the Court's answer to

16  numerous legal questions, including several related to the Governor's power to

17  appoint Superior Court judges. Id. at 221-29.

18     As he has done previously, Plaintiff has also submitted an application for

19  an order directing service by the U.S. Marshal's Service under Federal Rule of

20  Civil Procedure 4(c)(3). See Dkt. 37. Before ordering Marshal's service of the

21  complaint, this Court will screen the complaint for purposes of determining

22  whether the action is frivolous or malicious; or fails to state a claim on which

23  relief may be granted; or seeks monetary relief against a defendant who is

24  immune from such relief. See 28 U.S.C. § 1915(e)(2).

25  ///

26  ///

27  ///

28  ///

4

## II.

## SUMMARY OF THE SAC'S ALLEGATIONS

**A.    Voting Allegations**

Plaintiff alleges that he was unconstitutionally denied the right to vote in the June 3, 2014 primary elections. SAC at 31-32. Plaintiff claims that he was denied the right to vote for "at least 33 out of the 56 total elected public offices." Id. at 36. Plaintiff also alleges that the CDP and the CDPSCC, along with Governor Brown, have an unlawful official policy of endorsing candidates for non-partisan offices, and that this policy deprives California voters of their right to vote while utilizing the federal postal service. Id. at 76-78, 84. Plaintiff also alleges various other unlawful voting restrictions perpetrated by State Defendants. Id. at 81-87, 91, 111. As a result of these alleged violations, Plaintiff accuses State Defendants of committing a "partisan coup d'etat," e.g., id. at 96, 108, and alleges that they are guilty of "treason," id. at 108. Plaintiff claims that State Defendants conspired, aided and abetted, or were accessories after the fact for a variety of U.S. and California, constitutional and statutory violations. Id. at 98. Plaintiff claims that State Defendants were not properly elected, and as such, are not eligible for any type of immunity for their acts and also committed fraud. Id. at 107-08, 128. Plaintiff also claims that Cal. Const. Art. 6 § 16(b) is unconstitutionally vague, and that California's practice of only allowing attorneys to run for superior court judge is unconstitutional. Id. at 108, 110-11. Plaintiff claims that Cal. Gov't Code §12011.5 is unconstitutional. Id. at 111. Plaintiff alleges that State Defendants are responsible for unlawfully assigning court commissioners to unlawful detainer cases. Id. at 112-13.

**B.    Unlawful Detainer and Other Allegations Related to Plaintiff's Home**

Plaintiff alleges that he was evicted from his home, located at 806 14th Street, Huntington Beach, California ("14th Street Home"), by his landlords

the Earls. Id. at 55, 57, 63. Plaintiff claims that the Earls initiated an unlawful detainer action against him that did not name the proper plaintiff; such failure, Plaintiff alleges, deprived the Earls of the standing to bring an unlawful detainer claim. Id. at 57-58, 61. Plaintiff alleges that the Earls acted with the intent to induce State Defendants to deprive Plaintiff of his civil rights. Id. at 136. Plaintiff alleges that Judge Luege exercised jurisdiction in an unlawful detainer case against Plaintiff without obtaining a stipulation from Plaintiff. Id. at 59, 61, 62, 115, 119. Plaintiff alleges that Judge Luege failed to make required disclosures to Plaintiff. Id. at 120. Plaintiff alleges that State Defendants knew that Judge Luege lacked jurisdiction. Id. at 132. Also, Plaintiff claims that Judge Luege unlawfully failed to disqualify herself from Plaintiff's case, and that State Defendants are responsible for the harm caused to Plaintiff as a result. Id. at 112-14, 117. Plaintiff alleges that Judge Luege entered judgment against him without providing Plaintiff the opportunity to review or object to the judgment. Id. at 63. Plaintiff alleges that State Defendants unlawfully removed him from the 14th Street Home as a result of the unlawful detainer proceedings. Id. Plaintiff alleges Judge Borris was the final policymaker for the OC Court and Judge Luege. Id. at 97, 120. Plaintiff alleges various other contract, tort and zoning claims against the Earls and the State Defendants relating to the 14th Street Home. Id. at 133-36.

**C.**   **Lead-Based Paint Allegations**

Plaintiff alleges that the Earls failed to disclose as required by federal law that the home contained hazardous levels of lead-based paints and asbestos. Id. at 54, 130. Plaintiff alleges that the Earls failed to warn Plaintiff of the lead hazard and also fraudulently misrepresented the home as lead- and asbestos-free. Id. at 130-31. Plaintiff alleges that he suffered health problems and other damages as a result of exposure to hazardous levels of lead-based paint and asbestos. Id. at 55, 131, 132. Plaintiff also alleges that he has family members

under the age of 6 who were exposed to lead-based paint and asbestos. <u>Id.</u> at 54, 132. Plaintiff claims the Earls acted negligently. <u>Id.</u> at 138.

**D.   Access to Justice Allegations**

Plaintiff claims California's judicial core function is materially impaired by executive and legislative fiscal policies of failing to fill available judgeships, for which he blames State Defendants. <u>Id.</u> at 45-48, 88. Plaintiff claims that the "$1 billion in [legislative] budget cuts has crippled our courts," and that the closure of "205 courtrooms" and "[m]ore than 50 courthouses" has "deprived more than 2 million residents of accessible justice"; this policy, Plaintiff claims, is the cause of the harm he suffered due to the unlawful detainer hearings presided over by Judge Luege. <u>Id.</u> at 52-53, 89.

**E.   Allegations Related to Plaintiff's Family Law Dispute**

Plaintiff alleges that Comberiati fraudulently attempted to persuade Plaintiff's grandmother to place Comberiati as a beneficiary in her trust. <u>Id.</u> at 63. Plaintiff alleges that Comberiati committed child abuse against Plaintiff's brother and sister, and that as a result of his attempted intervention, Comberiati filed an restraining order against Plaintiff. <u>Id.</u> at 57-58. Plaintiff alleges that Judge Lucky denied a number of motions by Plaintiff to change the venue of the proceedings and dismiss the case. <u>Id.</u> at 66, 69. Plaintiff claims that he filed an Anti-SLAPP motion against Comberiati with Judge Lucky, and without notice, Judge Lucky re-scheduled Plaintiff's hearing and ruled against him. <u>Id.</u> 69-71, 75B. Plaintiff further alleges that Judge Lucky was without jurisdiction to rule on Plaintiff's family law case because he failed to appear on the election ballot in 2010, and that Judge Lucky's failure to appear on the ballot was part of a partisan conspiracy on the part of State Defendants. <u>Id.</u> at 64-66, 67, 75A.

///

///

7

### III.

### STANDARD OF REVIEW

The following standards govern the Court's screening of the FAC. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons:  (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and must afford Plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).  Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain

8

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

## IV.

## DISCUSSION

The Court's patience for Plaintiff's efforts to submit a complaint that can pass muster has worn thin. The Court identifies below a series of legal issues that afflict the SAC. They revolve around four fundamental issues that Plaintiff must correct before he will be permitted to move ahead with this case. <u>First</u>, it does not appear that Plaintiff has made any effort whatsoever to rectify the legal inadequacies the Court has already identified. Instead, Plaintiff continues to assert claims that are barred by well-established doctrines like judicial immunity and <u>Rooker</u>-<u>Feldman</u>. <u>Second</u>, Plaintiff increasingly fills his pleading with paragraph after paragraph and page after page of overheated rhetoric and blustery argument, with citations to irrelevant sources. Indeed, the very first paragraph of the SAC is a paradigmatic example of this kind of pleading, as it contains two irrelevant quotations from The Federalist Papers, written almost 250 years ago. <u>Third</u>, the scope of Plaintiff's claims continues to spiral out of control. What started as an effort to challenge the outcome of a state-court unlawful detainer proceeding and assert claims based on a federal statute regulating residential lead-based paint has turned into what can only be characterized as a jeremiad regarding the state judiciary. <u>Finally</u>, perhaps as a result of the second and third issues, Plaintiff utterly fails to identify his claims for relief or what Defendants are implicated in each claim as required by federal law. Instead, he inadequately offers the excuse that to do so would require a pleading that is even longer, tipping the scales at over 1,000 pages, and he "reserves" those allegations.

9

**A.**   **The SAC Fails to Comply With Fed. R. Civ. P. 8**

The Federal Rules of Civil Procedure require that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A claim is the aggregate of operative facts which give rise to a right enforceable in the courts." Bautista v. Los Angeles County, 216 F.3d 837, 840 (9th Cir. 2000). To comply with Rule 8, a plaintiff must plead a short and plain statement of the elements of his or her claim, "identifying the transaction or occurrence giving rise to the claim and the elements of a prima facie case." Id. at 840. In general "a dismissal for a violation under Rule 8(a)[], is usually confined to instances in which the complaint is so verbose, confused and redundant that its true substance, if any, is well disguised." Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008).

This Court has the discretion to dismiss a complaint which fails to comply with the requirements of Rule 8, notwithstanding the existence of a viable cause of action. Hearns v. San Bernardino Police Department, 530 F.3d 1124, 1129-30 (9th Cir. 2008). This is particularly so when the dismissal is without prejudice and with leave to file a motion to amend, as is recommended here. Hearns, 530 F.3d at 1131-32; McHenry v. Penne, 84 F.3d 1172, 1179-80 (9th Cir. 1996). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit.  . . .  Rule 8(e), requiring each averment of a pleading to be 'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." McHenry, 84 F.3d at 1179-80.

Here, the SAC is so lengthy, verbose, and redundant that it is neither "short" nor "plain." When granted leave to amend his very lengthy FAC, Plaintiff spent nearly eight months composing an even longer SAC. Weighing in at 238 pages, Plaintiff's SAC is by turns rambling, repetitive, and

argumentative. The pleading could much shorter without losing any clarity and it is likely the pleading would be much clearer if shortened. As one court has admonished:

> Plaintiff must eliminate from plaintiff's pleading all preambles, introductions, argument, speeches, explanations, stories, griping, vouching, evidence, attempts to negate possible defenses, summaries, and the like.
>
> . . .
>
> The court (and any defendant) should be able to read and understand Plaintiff's pleading within minutes. A long, rambling pleading, including many defendants with unexplained, tenuous or implausible connection to the alleged constitutional injury or joining a series of unrelated claims against many defendants very likely will result in delaying the review required by 28 U.S.C. § 1915 and an order dismissing plaintiff's action pursuant to Fed. R. Civ. P. 41 for violation of these instructions.

Clayburn v. Schirmer, No. 06-2182, 2008 WL 564958, *3-*4 (E.D. Cal. Feb. 28, 2008) (Alarcon, J., by designation) (citations omitted).

The Ninth Circuit has illustrated a "short and plain" claim by quoting from an official federal form for negligence:

> The complaints in the official Appendix of Forms are dramatically short and plain. For example, the standard negligence complaint consists of three short paragraphs:
>
> 1. Allegation of jurisdiction.
>
> 2. On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff, who was then crossing said highway.

3. As a result plaintiff was thrown down and had his leg broken, and was otherwise injured, was prevented from transacting his business, suffered great pain of body and mind, and incurred expenses for medical attention and hospitalization in the sum of one thousand dollars.

Wherefore plaintiff demands judgment against defendant in the sum of _____ dollars and costs.

Fed. R. Civ. P. Form 9. This complaint fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery. It can be read in seconds and understood in minutes. McHenry, 84 F.3d at 1177.

By contrast, the Plaintiff's SAC, like the claim in McHenry, is "argumentative, prolix, replete with redundancy and largely irrelevant." Id. It is "mostly narrative ramblings and storytelling or political griping." Id. at 1176. Plaintiff's complaint is the forum for him to aver facts that lead to the conclusion that he states a claim, not for him to deliver a speech. Picking just a couple of pages from the SAC at random leads to startling examples of violations of Rule 8. On page 143, one encounters a quotation that is nearly 200 years old from a U.S. Supreme Court case as well as a footnote that cites several treatises and law review articles. See SAC at 143 & n. 455. On page 210, the reader finds a footnote that contains a lengthy aside about the level of civics education. See id. at 210 n. 709.[3] One can begin reading on page 196 and not encounter a single factual allegation for 13 pages until page 209, when

_____

[3] Each of these footnotes, as well as the 738 other footnotes, also violates Local Rule 11-3.1.1's requirement that pleadings use a monospaced font that contains no more than 10-1/2 characters per inch.

Plaintiff begins his prayer for relief. See id. at 196-209. Instead, one encounters references to pre-World War II Germany and the Bible as well as repeated self-aggrandizements. To put it simply: pages, paragraphs, and footnotes such as these do not further Plaintiff's claims and must be stricken from any amended complaint. The pleading stage is the time for "short and plain" allegations supporting straightforward claims; it is not the place for hundreds of footnotes with long quotations and parentheticals from cases, nor is it the place for hundreds of pages of details and exhibits (many of which could simply have been cited instead of physically attached) meant to prove those allegations.

Accordingly, the FAC must be dismissed in its entirety for failure to comply with the requirements of Rule 8. If Plaintiff wishes to file a Third Amended Complaint, he must make a short and plain statement of the facts that is simple, concise, and direct, without any superfluous detail or irrelevant tangents. Any Third Amended Complaint should not include legal argument and citations, but must briefly identify the specific acts on which the claims are based. It should clearly and succinctly describe what each Defendant allegedly did or failed to do, and the damage or injury suffered by Plaintiff as a result. It must also identify each cause of action and clearly identify which Defendants are named in each cause of action. Plaintiff is cautioned that a failure to abide by these directives may lead to a recommendation that his action be dismissed without leave to amend.

**B.    Many of Plaintiff's Constituitonal Claims Continue to Be Barred by the *Rooker-Feldman* Doctrine**

As discussed in the order dismissing Plaintiff's FAC, the Rooker-Feldman doctrine, derived from two United States Supreme Court opinions, provides that federal district courts may not exercise appellate jurisdiction over state court final judgments. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86 (1983); Rooker v. Fidelity Trust Co., 263 U.S.

13

413, 415-16, 44 S. Ct. 149, 68 L. Ed. 362 (1923); <u>Bennett v. Yoshina</u>, 140 F.3d 1218, 1223 (9th Cir. 1998) (as amended). Review of state court decisions may be conducted only by the United States Supreme Court. <u>Feldman</u>, 460 U.S. at 476, 486; <u>Rooker</u>, 263 U.S. at 416; <u>see</u> 28 U.S.C. § 1257. The <u>Rooker</u>-<u>Feldman</u> doctrine applies even when the challenge to the state court decision involves federal constitutional issues. <u>See</u> <u>Dubinka v. Judges of the Superior Court</u>, 23 F.3d 218, 221 (9th Cir. 1994); <u>Worldwide Church of God v. McNair</u>, 805 F.2d 888, 891 (9th Cir. 1986); <u>see also</u> <u>Branson v. Nott</u>, 62 F.3d 287, 290-92 (9th Cir. 1995) (involving procedural due process challenge to state court proceedings).

Plaintiff makes claims against Judges Luege, Lucky, Sanders and Borris, and the OC and Riverside Courts, that are based on suits with outcomes unfavorable to Plaintiff. <u>See, e.g.</u>, SAC at 58-75B. Plaintiff seeks injunctive relief in the form of awarding Plaintiff possession of the home at 806 14th Street. <u>Id.</u> at 228. Plaintiff also seeks damages. <u>Id.</u> at 229.

Because Plaintiff's claims appear to include claims based on a de facto appeal of the state courts' judgments, and because Plaintiff also alleges legal errors by the state courts, the Court concludes that it appears that the <u>Rooker</u>-<u>Feldman</u> doctrine deprives the Court of jurisdiction of at least some of the claims in the SAC. Accordingly, any causes of action based on these judgments are subject to dismissal for failure to state a claim.

**C.** **Plaintiff's Allegations Continue to Be Inadequate to Turn Private Actors into Proper § 1983 Defendants**

In order to state a claim against a particular defendant for a civil rights violation under § 1983, Plaintiff must allege that the defendant deprived him of a right guaranteed under the Constitution or a federal statute, while acting under color of state law. As the Court previously advised Plaintiff, the ultimate issue in determining whether a person is subject to suit under § 1983 is whether

the alleged infringement of federal rights is fairly attributable to the government. <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982); <u>see also</u> <u>Huffman v. County of Los Angeles</u>, 147 F.3d 1054, 1057 (9th Cir. 1998) (holding that a defendant must have acted "under color of law" to be held liable under § 1983).  Simply put, section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrong." <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49 (1999) (citations and internal quotations omitted).

Because the Earls are private actors, Plaintiff may not bring a cause of action against them under § 1983 unless Plaintiff sufficiently alleges that the Earls conspired or acted jointly with a state actor to deprive Plaintiff of his constitutional rights. <u>See</u> <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540 (9th Cir. 1989) ("Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights.") (en banc). The allegations of the complaint must support the inference that the Earls and any person acting under color of state law reached an "agreement or meeting of the minds to violate [Plaintiff's] constitutional rights." <u>Id.</u> at 1540-41 (internal quotation marks omitted); <u>see also</u> <u>Franklin v. Fox</u>, 312 F.3d 423, 445 (9th Cir. 1992) (concluding that a "substantial degree of cooperation" with a state official is required to impose civil liability on private individuals for actions that "impinge on civil rights"). Conclusory allegations are insufficient to establish that a private individual was conspiring or acting jointly with a state actor. <u>Dietrich v. John Ascuaga's Nugget</u>, 548 F.3d 892, 900 (9th Cir. 2008) (holding that "bare allegation" of "joint action will not overcome a motion to dismiss; the plaintiff must allege facts tending to show that [Defendants] acted under color of state law or authority") (quoting <u>DeGrassi v. City of Glendora</u>, 207 F.3d 636, 647 (9th Cir.2000)); <u>Simmons v. Sacramento Cnty. Superior Ct.</u>, 318 F.3d 1156, 1161

15

1  (9th Cir. 2003) ("Plaintiff's conclusory allegations that the lawyer was
2  conspiring with state officers to deprive him of due process are insufficient.").

3       The Court dismissed Plaintiff's original complaint, which named the
4  Earls only, because it concluded that Plaintiff had not alleged any facts to
5  show that the Earls conspired or acted jointly with a state actor to deprive
6  Plaintiff of his constitutional rights. In the SAC, Plaintiff alleges that the Earls
7  "false representations were made with the intent to induce STATE
8  DEFENDANTS to violate PLAINTIFF's civil rights as described in this
9  complaint." SAC at 136. Otherwise, Plaintiff merely makes the conclusory
10  allegation that all of the violations alleged in the SAC were committed under
11  the color of law. Id. at 125, 142. These allegations continue to be insufficient to
12  show that the Earls or any other private party conspired or acted jointly with
13  any state actor to violate his rights. Such a bare allegation of joint action does
14  not demonstrate the kind of substantial degree of cooperation necessary to
15  state a claim for relief. Accordingly, Plaintiff's § 1983 causes of action against
16  the Earls continues to fail to state a claim for relief.

17  **D.**   **Judicial Immunity Continues to Bar Plaintiff's Claims Against the**
18       **Named Judges**

19       As this Court has explained to Plaintiff, judges are absolutely immune
20  from liability for acts within their judicial capacity. Mireles v. Waco, 502 U.S.
21  9, 11 (1991) (per curiam); Miller v. Davis, 521 F.3d 1142, 1145 (9th Cir. 2008).
22  This is an immunity from suit, not just from the ultimate assessment of
23  damages. Mireles, 502 U.S. at 11; see also Mitchell v. Forsyth, 427 U.S. 511,
24  526 (1985). This immunity applies "'however erroneous the act may have
25  been, and however injurious in its consequences it may have proved to the
26  plaintiff.'" Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985) (quoting
27  Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1871)). "Grave procedural
28  errors or acts in excess of judicial authority do not deprive a judge of this

1   immunity." <u>Schucker v. Rockwood</u>, 846 F.2d 1202, 1204 (9th Cir. 1988).

2      Many of Plaintiff's claims against Judges Luege and Lucky are based

3   solely on rulings by Judges Luege and Lucky in actions pending before them to

4   which Plaintiff was a party. <u>See</u> SAC at 59-75B. These factual allegations of

5   conduct by Judges Luege and Lucky pertain to functions that are normally

6   performed by a judge and fall within the responsibilities of their roles as

7   judicial officers. <u>See, e.g.</u>, <u>Moore</u>, 96 F.3d at 1244-45 (applying a "functional

8   approach" to judicial immunity and stating that "immunity flows from the

9   nature of the responsibilities of the individual official").

10     Plaintiff's allegation that Judge Lucky "usurped" his "elected judicial

11  office" (SAC at 66) and therefore acted "in a clear absence of all jurisdiction"

12  (<u>id.</u>) is not sufficient to deprive Judge Lucky of absolute judicial immunity.

13  Nor is Plaintiff's allegation that "commissioners have a clear absence of all

14  jurisdiction…without a proper stipulation" (SAC at 59) sufficient to deprive

15  Judge Luege of absolute judicial immunity. A judge retains immunity for her

16  judicial acts, even when such acts allegedly were performed in excess of her

17  jurisdiction. It is only when a judge acts with "the clear absence of all

18  jurisdiction over the subject-matter" that immunity is lost. <u>Stump</u>, 435 U.S. at

19  356 & n.6; <u>Miller</u>, 521 F.3d at 1147 (holding that a "clear absence of all

20  jurisdiction means a clear lack of all subject matter jurisdiction"). Additionally,

21  "the scope of the judge's jurisdiction must be construed broadly where the

22  issue is the immunity of the judge." <u>Stump</u>, 435 U.S. at 356. In this case, none

23  of the actions by Judges Luege or Lucky about which Plaintiff complains fall

24  outside of the scope of their subject matter jurisdiction as a Superior Court

25  Commissioner or Superior Court Judge.

26     The Court accordingly concludes that Plaintiff has failed to state a claim

27  for relief against Judges Luege or Lucky for actions related to Plaintiff's state

28  court cases. Plaintiff's claims against Judges Luege and Lucky related to

1    Plaintiff's state court cases are subject to dismissal.

2    **E.    Alleged Violations of California and Federal Criminal Codes Are Not**

3    **Cognizable in this Court**

4    Generally, criminal statutes do not create private rights of action, and

5    violations of criminal statutes cannot serve as a basis for civil liability. See Ellis

6    v. City of San Diego, Cal., 176 F.3d 1183, 1189 (9th Cir. 1999) (affirming

7    dismissal of 16 causes of action predicated on violations of the California

8    Penal Code "[b]ecause these code sections do not create enforceable individual

9    rights"); see also Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)

10   (holding that 18 U.S.C. §§ 241 and 242 are criminal provisions that provide no

11   basis for civil liability). For a section of the federal criminal code or the

12   California penal code to provide a private right of action, there must be "at

13   least [some] statutory basis for inferring that a civil cause of action of some sort

14   lay in favor of someone." Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979)

15   (citation and internal quotations omitted); see also Clinkscales v. Carver, 22

16   Cal.2d 72, 75 (1943) ("A statute that provides for a criminal proceeding only

17   does not create a civil liability; if there is no provision for a remedy by civil

18   action to persons injured by a breach of the statute it is because the Legislature

19   did not contemplate one.").

20   The Court has reviewed the federal and state criminal codes cited by

21   Plaintiff and finds no indication that civil enforcement of any kind is available

22   to him. The United States Attorney's Office and the Orange County District

23   Attorney's Office are the prosecuting agencies equipped to investigate

24   allegations of criminal misconduct. Therefore, all of the claims alleging

25   violations of federal and state criminal statutes are subject to dismissal.

26   ///

27   ///

28   ///

18

**F.**   **The State of California, OC and Riverside Superior Courts are Immune from Suit under the 11th Amendment**

California is not a person that can be liable under 42 U.S.C. § 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (holding that states, state agencies and state officials sued in their official capacities are not persons subject to civil rights lawsuits under 42 U.S.C. § 1983); see also Hafer v. Melo, 502 U.S. 21, 30 (1991) (clarifying that the Eleventh Amendment does not bar suits against state officials sued in their individual capacities nor does it bar prospective injunctive relief claims against state officials in their official capacities). A suit against a Superior Court is a suit against the State, barred by Eleventh Amendment sovereign immunity. Greater Los Angeles Council on Deafness, Inc. v. Zolin, 812 F.2d 1103, 1110 (9th Cir. 1987).

To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, either the State must have "unequivocally expressed" its consent to waive its sovereign immunity or Congress must have abrogated it. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984). California has consented to be sued in its own courts pursuant to the California Tort Claims Act, but such consent does not constitute consent to suit in federal court. See BV Engineering v. Univ. of Cal., Los Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California Constitution did not constitute a waiver of the state's Eleventh Amendment immunity). Furthermore, Congress has not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983.

Therefore, Plaintiff may not name the State of California or either the Orange County Superior Court or Riverside Superior Court in any cause of action premised on 42 U.S.C. § 1983. Any such claims are subject to dismissal.

**G.   The United States Is Immune from Suit**

"It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Mitchell, 445 U.S. 535, 538 (1980). While Plaintiff names the United States as a defendant, he does not seem to allege any wrongdoing by the United States. Therefore, claims against the United States should be dismissed.

**H.   Plaintiff's Allegations Related to Judicial Elections, Access to Justice, and Family Law Proceedings Are Not Properly Joined with His Allegations Related to Unlawful Detainer Proceedings**

While multiple claims against a single party may be alleged in a single complaint, unrelated claims against different defendants must be alleged in separate complaints. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (finding, under Rule 18(a), prisoner improperly brought complaint raising fifty distinct claims against twenty-four defendants). Further, parties may be joined as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). As a practical matter, this means that claims involving different parties cannot be joined together in one complaint if the facts giving rise to the claims were not factually related in some way—that is, if there was not "similarity in the factual background of a claim." Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). General allegations are not sufficient to constitute similarity when the specifics are different. Id. The court, on its own initiative, may dismiss misjoined parties from an action, and any claim against a misjoined party may be severed and proceeded with separately. See Fed. R. Civ. P. 21.

The factual background of Plaintiff's unlawful detainer and lead-based paint removal allegations are not in any way similar to either (1) Plaintiff's allegations about the outcome of the family law dispute involving Comberiati and Nashed or (2) Plaintiff's allegations about how Superior Court judges are elected or how the state courts are funded. Accordingly, any parties joined on the basis of the latter claims are subject to dismissal. If Plaintiff wishes to continue to seek relief on the basis of claims arising out of these latter claims, he must do so in a separate action. See Hemsley v. Santa Rita Cnty. Jail, No. 10-1841, 2010 WL 2179781, at *1 (N.D. Cal. May 27, 2010).

## V.

## CONCLUSION

The Court dismisses the SAC in its entirety for failure to comply with the requirements of Rule 8. If Plaintiff wishes to file a Third Amended Complaint ("TAC"), he must make a short and plain statement of the facts that is simple, concise, and direct, without any superfluous detail or irrelevant tangents. The TAC must not include any lengthy quotations from non-factual material, rhetorical questions, legal argument, citations to newspaper articles, or harangues against the government of California. Rule 8 forbids these. Furthermore, Plaintiff is urged to avoid joining a series of unrelated claims against unrelated Defendants.  The TAC must briefly identify the specific acts on which the claims are based. It should clearly and succinctly describe what each Defendant allegedly did or failed to do, and the damage or injury suffered by Plaintiff as a result. It must also clearly identify each cause of action and clearly identify which Defendants are named in each cause of action.

The Court has already given Plaintiff two opportunities to amend. A pro se litigant like Plaintiff must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the compliant cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987). The

Court will therefore provide Plaintiff with another opportunity. However, Plaintiff is cautioned that a failure to abide by the directives in this Order may lead to a recommendation that some or all of Plaintiff's claims be dismissed without leave to amend.

If Plaintiff still desires to pursue his causes of action, he shall file a TAC within thirty-five (35) days of the date of this Order remedying the deficiencies discussed above. The causes of action should be numbered and each defendant clearly associated with a cause of action. The TAC should be no longer than 40 pages; bear the docket number assigned in this case; be labeled "Third Amended Complaint"; and be complete in and of itself without reference to the original Complaint or any other pleading, attachment, or document. Plaintiff is admonished that, if he fails to timely file a TAC, or that if he fails to file a TAC that complies with the limitations of this paragraph, the Court will recommend that this action be dismissed with prejudice for failure to diligently prosecute and/or failure to obey this Court's orders.

Dated:   January 14, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge